■ In the Matter of the Estate of CHARLES S. MAURICE, Deceased. STEWART MAURICE, Respondent; CHARLES W. DALL, JR., et al., Appellants, and CHARLES F. MAURICE, JR., et al., Respondents.—In a proceeding to settle a trust account, the appeal is from so much of a judgment of the Supreme Court, Westchester County, dated August 25, 1978, as (1) awarded the trustees commissions for certain periods and (2) directed that the trust assets be distributed per stirpes among all of the descendants of Charles S. Maurice. Judgment modified by deleting the third decretal paragraph thereof and substituting therefor a provision that the trustees' commissions shall be recalculated upon final settlement of the account and thereafter paid. As so modified, judgment affirmed insofar as appealed from, with one bill of $50 costs and disbursements payable jointly to respondents appearing separately and filing separate briefs. The appellants argue that the court has improperly ordered payment of the trustees' commissions before the computations are made for the final judicial settlement. The respondents agree that the commissions must be recalculated to reflect the changes in the capital value at the final judicial accounting and that therefore payment cannot be made prior to the final settlement. Thus we modify the judgment to incorporate this clarification. We agree with Justice Sirignano's construction of the trust instrument. Damiani, Gulotta and Cohalan, JJ., concur.

Hopkins, J. P., dissents and votes to modify the judgment further by directing that the principal of the trust should be distributed in three shares per stirpes to the appellants, with the following memorandum, in which O'Connor, J., concurs: In 1916 the settlor established a trust. By its terms the trust ended in 1975. The issue between the parties is the distribution of the remaining principal. That issue must be determined by the language of two paragraphs of the trust instrument. Under the provisions of the trust, the income from the trust principal was payable in equal shares to six of the settlor's eight children and the surviving issue of these children, until termination of the trust upon the death of the survivor of the settlor's two youngest daughters, Emily and Margaret. The settlor named as trustees the two children who were not designated as income beneficiaries. The two paragraphs of the trust relating to the distribution of principal read as follows: "In the event that any of my said children shall die prior to the termination of the trust herein, without leaving issue him or her surviving, I direct my trustees and the survivor of them and their successor or successors to separate from the principal of the above trust fund, the amount which would represent the proportionate share of principal, to which such deceased child would be entitled, if then living and the above trust were then terminated, and to assign and transfer the same, in equal shares, to each of my children then surviving, (including my said trustees) and to the issue of any of my children (including the issue of either of my said trustees), who shall have then died leaving issue him or her surviving, the issue of such deceased child taking only the share which his or her parent would have taken, if living. Upon the termination of the trust herein, I direct my trustees and the survivor of them and their successor or successors to divide the principal of the trust herein, into as many equal shares as there are then surviving children of mine who are beneficiaries of the trust herein, and deceased children of mine, who were beneficiaries of

the trust herein, during their respective lifetimes and who have left issue then surviving, and to assign and transfer absolutely and forever, one such equal share to each of my above named children then surviving and to the issue of any of my above named children, who shall have died leaving issue him or her surviving, the issue of any such deceased child taking only the share which his or her parent would have taken if living." During the tenure of the trust, partial distributions of principal were made after the death of three of the income beneficiaries without issue. In each instance the distribution was made by computing the proportionate share of the deceased income beneficiary, and dividing that share among all of the then surviving children and the issue of such children as might have theretofore died. This method of division followed the provisions of the first-quoted paragraph controlling the partial distribution of principal prior to the termination of the trust. In December, 1975 the trust terminated on the death of Emily. The question before us is whether the remaining principal should be distributed per stirpes among all the surviving issue of the settlor (including the issue of the original trustees), or instead, among the surviving issue of the income beneficiaries (excluding the issue of the original trustees). The question in my view, is controlled by the plain language of the second-quoted paragraph which calls for the division of the remaining principal "into as many equal shares as there are then surviving children of mine who are beneficiaries of the trust herein, and deceased children of mine, who were beneficiaries of the trust herein, during their respective lifetimes and who have left issue then surviving". Parenthetically, it should be said that the parties to the controversy rely on the language of the instrument and that no extrinsic evidence as to the settlor's intent was produced at Special Term. Special Term held that the remaining principal "should be distributed per stirpes to and among all of the settlor's decendants who survived the termination of the trust", thus including the issue of the original trustees. I cannot agree. The settlor deliberately chose six of his eight children as income beneficiaries and named the other two children as trustees, for reasons best known to him. As the income beneficiaries died, in the fortuitous event without issue before his daughters, Margaret and Emily, he provided that a share of the principal then payable should go "to each of my children then surviving *(including my said trustees)* and to the issue of any of my children *(including the issue of my said trustees),* who shall have then died leaving issue him or her surviving" (emphasis supplied). In this event the settlor by specific reference to the trustees and their issue made clear without doubt that they should be included within the division. He did not make such specific designation when he provided for distribution of the principal at the end of the trust. In the absence of evidence to the contrary of the settlor's intent, his chosen language marks the boundaries of his bounty. A trust instrument, like a contract or will, should be governed by the language selected by its progenitor. "In resolving that question, we concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote" *(Raleigh Assoc. v Henry,* 302 NY 467, 473 [lease]). And in reading intent, rules of construction are not absolute. "It is well established that rules of construction are merely subsidiary aids. *(Matter of Watson,* 262 N. Y. 284, 293, 294.) If intention of a will-maker is to be found in the words used in the will and these are clear and definite there is no power to change them." *(Matter of Bisconti,* 306 NY 442, 445; accord *Matter of Tamargo,* 220 NY 225, 231 [wills].)* Gifts by implication are not favored and cannot be created unless the intent of the instrument maker is clearly manifested by other

provisions of the instrument. *(Matter of Englis,* 2 NY2d 395, 402-404; *Matter of Slater,* 3 NY2d 109, 112.) The trustees or their issue were never income beneficiaries of the trust; the trust disposes of the remaining principal at the time of its termination by giving it in equal parts to those children or their issue "who are [or] were beneficiaries of the trust herein". If the settlor had meant to include the trustees or their issue within the class of beneficiary he would have said so, as he did in the paragraph providing for partial distribution during the life of the trust. To arrive at a result which puts all of the children or their issue in the same posture as beneficiaries creates a gift by implication to the trustees and their progeny, remakes the trust and negates the evident scheme of the trust, without demonstration in the trust instrument or elsewhere that this was the intention of the settlor. Courts are not soothsayers peering into the past to predict the future; in the end it is the words chosen by the gift maker which limit the extent and division of the gift. We cannot divine what the settlor would have done when confronted by the eventuality that ultimately arises except by the language of the trust. I would therefore modify the judgment further to provide for distribution of the trust principal to the issue of the income beneficiaries per stirpes. I am in accord with the majority that the judgment should also be modified by providing for the trustees' commissions to be recalculated on the final settlement of the account.